BRADFORD *v.* COOLEDGE & BROTHER *et al.*

1. Where under the traders' act the property of an insolvent debtor, on the petition of unsecured creditors (who filed the same for the benefit of themselves and such creditors as might join therein), was placed in the hands of a receiver, a creditor who held a mortgage executed and recorded prior to the filing of the petition, and who, between the dates of the appointment of the temporary and the permanent receiver, foreclosed her mortgage and placed the execution issued thereon in the hands of the sheriff, is not to be charged with any of the expenses of the receivership, or with costs, merely because of the fact that as soon as the permanent receiver

was appointed she filed a petition in which she simply "made known to the court the existence of her mortgage, pointed out the property on which it was a lien, and prayed that said lien be preserved and its priority protected." Especially is this true when subsequently, by amendment to the original petition, the validity of the mortgage was attacked by the unsecured creditors, and it was prayed that the mortgagee be made a party defendant, which was done by the formal order of the court.

2. When on the issue thus made the mortgage was declared to be free from fraud and valid, and it appeared that the property covered thereby had been sold by the receiver for an amount greater than that due on the mortgage, the mortgagee was entitled to have the amount due on the mortgage paid in full.

3. So much of the fund in the hands of the receiver as was necessary to pay off the amount due on the mortgage was not subject to be diminished by costs and expenses of the receivership; but so much of such costs and expenses as could not be met by the general fund arising from the sale of the property of the debtor in excess of the amount of the mortgage, or not covered by the mortgage lien, should be taxed against the plaintiffs.

4. When it appears that the whole property of the debtor is subject to liens of higher dignity than the mortgage, such as taxes, the court should order payment of such liens to be made from the general fund before other allowances are made, and as against such general fund the amount necessary to pay off the mortgage arising from the sale of the mortgaged property is not subject to payment of such higher liens, unless it be shown that the surplus arising from the sale of the property beyond the amount necessary to pay off the mortgage is not sufficient to meet them; and in that case the fund necessary to pay the mortgage can only be diminished to the extent that such general fund is deficient.

Argued February 22, — Decided March 24, 1898.

Motion to distribute money. Before Judge Henry. Floyd superior court. January term, 1897.

*Fouche & Fouche,* for plaintiff in error.

*Reece & Denny, Halsted Smith, J. W. Ewing, C. A. Thornwell, C. Rowell, W. T. Turnbull, W. W. Brookes* and *Max Meyerhardt,* contra.

LITTLE, J.    F. J. Cooledge & Brother and other unsecured creditors filed a petition in the superior court of Floyd county, against William Bradford, doing business under the firm name of the Bradford Drug Company. It was brought under the provisions of section 2716 et seq. of the Civil Code, known as the traders' act. On the presentation of the petition, the court, on June 5, 1893, appointed a temporary receiver, who at once took into his possession, among other things, a stock of drugs,

furniture and fixtures, of the cost value of $11,176.75, and of book accounts and notes to the amount of $1,838.70; also certain real estate, of little value by reason of encumbrances thereon. It appeared that Leonora Bradford, wife of the defendant, held a mortgage covering the stock of drugs, furniture, fixtures, etc., of which the receiver took possession. This mortgage purported to have been executed on May 29, 1893, and was recorded on the same day. On the 28th of June, which was after the appointment of the temporary receiver, Leonora Bradford foreclosed this mortgage, and placed the execution issued thereon in the hands of the sheriff of Floyd county. On June 30, 1893, the court appointed a permanent receiver, with direction to collect all debts due the defendant and to sell all his property of every kind. Concurrently with the hearing of the application to appoint a permanent receiver and simultaneously with such appointment, Leonora Bradford filed her separate petition, in which she "made known to the court the existence of her mortgage, pointed out the property upon which it was a lien, and prayed that such lien be preserved and that its priority be protected." On receiving this petition, the court ordered it to be filed, and further ordered that the proceeds of the sale of the mortgaged property be held by the receiver until the further order of the court. At the time of the hearing of the application to appoint a receiver, a large number of creditors came in and made themselves parties plaintiff to the creditors' petition. Acting under the orders of the court, the receiver, from time to time, sold the property of the debtor, and made his report to the court, from which it appeared that he realized from the sale of the property covered by Mrs. Bradford's mortgage the sum of $5,585.77, and from the collection of debts and the sale of property not covered by the mortgage $296.41, and from other sources $56.00.

On August 7, 1893, the plaintiffs, by leave, amended the original petition, and averred that the debt claimed by Leonora Bradford never in fact existed; that the note and mortgage to her were made for the purpose of hindering, delaying, and defrauding the creditors of William Bradford; that Leonora Bradford was not in fact a creditor of William Bradford, neither before

nor after the date of her mortgage, and that she had no separate estate. The amendment prayed that the note and mortgage be declared null and void, that they be delivered up and canceled, and that Leonora Bradford be made a party defendant in the cause, and that process issue against her; and upon the prayer of this petition she was, by order of the court, made a party defendant. To this amended petition Leonora Bradford made answer, averring that she was possessed of a separate estate, and in such answer also detailed the facts connected with her debt and mortgage and the bona fides of the same. Subsequently, by leave of the court, the receiver sold to Leonora Bradford certain goods and property covered by her mortgage to the amount of $2,824, and the said mortgagee entered into a bond with good security, payable to the receiver, conditioned that said sum was to be credited on her mortgage if the same should be declared valid, but was to be returned to the receiver if the mortgage was declared invalid. From time to time pending the case, the court ordered payments to be made to the receiver, to plaintiffs' attorneys for filing the bill, and to the receiver's attorney, and made other allowances for expenses; to all of which the mortgagee excepted pendente lite. On the 13th of February, 1897, the case came up for trial, and the matters at issue were submitted to a jury, who returned a verdict that the plaintiffs and intervenors named in the bill recover of the defendant various amounts named therein, and that "the mortgage in favor of Leonora Bradford, as set out in the pleadings, is free from fraud and is a good and valid lien upon the articles named therein and is a valid lien from its date for the amount of principal and interest due thereon." After this verdict was rendered, the receiver's final report was made, and the mortgagee, having credited her mortgage fi. fa. with the sum of $2,824 as of the date of September 1, 1893, and there appearing to be further due on said mortgage the sum of $2,469.42, she moved the court for an order and decree applying the money then in the receiver's hands, to wit $1,291, to her said fi. fa., and that she have a decree against the plaintiffs for the balance due on her fi. fa., $1,178.40. The court refused to so decree, but ordered the entire cost, $43.25, paid

out of said fund, and that the residue, $1,247.77, be applied to the mortgage fi. fa. ; and further decreed: "The costs and expenses of the receivership have been awarded paid out of the total fund as follows: That portion of the fund which was received from sources outside of the property covered by the mortgage has been all applied to the payment of said costs and expenses, and the balance of costs and expenses awarded to be paid out of funds covered by the mortgage and brought into court by the receiver." To this order and decree Leonora Bradford excepted.

1. The proceeding instituted by the creditors was in equity, and the several provisions of law which govern the rights of creditors and prescribe the method of procedure in such cases are laid down by sections 2716, 2717, 2718, 2719, 2720, 2721 and 2722 of the Civil Code. It is provided that in such proceedings any creditor may become a party to said petition under an order of court at any time before the final distribution of the assets. It is not necessarily the fact that a person interested can only become a party plaintiff. He may, if his interest lies in that direction, become equally as well a party defendant in the cause. The same section which allows creditors so to become parties, provides that they shall become chargeable with their proportion of the expenses of the previous proceeding. It appears that Leonora Bradford was a creditor of the defendant, that the debt was represented by a promissory note and secured by mortgage upon the stock of goods, furniture, etc., with which William Bradford carried on business, and it further appears that this note and mortgage securing the same was executed prior to the filing of the petition, and the mortgage was duly recorded. Soon after the filing of the petition and the appointment of a temporary receiver, the mortgagee foreclosed her mortgage and placed the execution in the hands of the sheriff. This action would seem to indicate an absence of intention to become a party litigant to the case, and also to indicate that it was her purpose to proceed with the collection of her debt through the intervention of her common-law remedy. Simultaneously with the appointment of the permanent receiver and the order of the court requiring the receiver

to seize and sell the property of the defendant, this mortgage-creditor filed a petition in the court; and it will be noted that she did not ask to become a party to the case either as plaintiff or defendant, nor did she pray for any relief derivable from the receiver's administration of the defendant's assets. She did, however, set out the fact of the existence of her mortgage, pointed out the property upon which she claimed to have a lien, and prayed that her lien be preserved and that its priority be protected. No order of court was passed upon this petition, nor was one required. The court took notice of the prayer of the petition, however; and while the judge ordered the property to be sold, he also directed the proceeds of the mortgaged property to be held by the receiver until the further order of the court. This action on the part of the mortgagee did not make her such a party to this case as to render her liable for any portion of the costs and expenses of the receivership. She evidently did not desire to become a party with a view to seeking any benefit from the receiver's administration, for her petition contained no prayer to this effect; but her entire purpose was manifestly accomplished when she brought to the attention of the court the existence of her lien and asked that it be preserved.

In the case of the *Citizens Bank of Georgia* v. *Hubbard*, 70 *Ga.* 411, where the proceeding was similar to that in this case and under the same provisions of law, this court held that one "is not an actual party to an equitable case until he has been made so in some way known to the law," and "though the plaintiff below may be interested in the creditors' bill, and as a creditor elect to come in according to the method provided in such cases and claim as a party to the suit, bearing his proportion of the expenses of the litigation, until he does come in he is not to be held as a party to such suit. To constitute himself such a party, he must either join in the filing of the bill, or subsequently be made a party thereto." The principle of that case as to the non-liability of one not a party for costs and expenses is applicable to one like the present, where the mortgagee merely gave notice to the court of the existence of the mortgage and asked that the lien which it created be preserved and its

priority protected. If there were any question on this point, it would be settled by the subsequent action of the plaintiffs and the order of the court, which dealt with the mortgagee as one not a party but who should be made a party to the case. After her petition had been filed, the plaintiffs, the unsecured creditors, amended their petition and attacked the validity of the mortgage of which notice had been given to the court, and prayed that the mortgagee be made a party defendant; and by order of the court she was made such party defendant. It is therefore manifest that the plaintiff in error never became willingly a party litigant to the case, and that she was compelled against her will, by order of the court on the petition of the unsecured creditors, to contest with them the question of the validity of the lien created by the mortgage.

2. The general rule in equity is, that the court will not entertain a creditors' bill, except on the petition of one or more creditors having a lien upon the property of the defendant. The act of 1881, from which the provisions of the law we are now considering are codified, is an exception to that general rule, and provides that bills of this character may be filed by creditors whose claims are unsecured, and it is expressly provided that after the appointment of a receiver, no creditor shall acquire any preference by any judgment or lien on any suit commenced after the filing of the creditors' petition, and that all assignments and mortgages to pay or secure existing debts, made after the filing of the petition, shall be vacated, and the assets be divided pro rata among the creditors, *preserving all existing liens.* The object of this legislation was to protect all creditors; it was to appropriate the property of insolvent debtors in a just and equitable way to the payment of their debts. It undertook to prevent the creation of any liens by judgment under proceedings commenced after the petition had been filed, and also to prevent the creation of any lien by contract after that date. By its plain terms, the status of creditors shall not be changed by any action taken by the parties or the court after the filing of the petition. It will be noted, however, that while the act contemplates a division of the debtor's assets among the creditors pro rata, it is imperative in declaring that *all existing*

*liens shall be preserved.* The creditors filing such a petition can acquire no greater rights as against existing liens than the debtor himself has, unless there were fraud or collusion. It must follow, therefore, that when the mortgage which was attacked in this case, and which was the only lien held by any creditor, was declared to be free from fraud and valid, and it further appeared that the receiver realized from the sale of the property covered by the mortgage an amount of money more than sufficient to pay off the same, the mortgage-creditor is, under the law, entitled to have the amount due on the mortgage paid in full. Of course if the property covered by the mortgage was not sufficient to pay off the amount due thereon, the mortgage-creditor could only receive the amount which such property brought. Not having sought or endeavored to participate in the general fund arising from the sale of the entire property of the debtor, or asked for any relief of this nature, she was not entitled to have applied toward the payment of her mortgage any sum other than that realized from the sale of the mortgaged property. Having been constrained to litigate over the lien of her mortgage, upon which exclusively she relied, and having established its validity, she was entitled to such amount of the proceeds arising from the sale of the property covered by her mortgage as was necessary to liquidate the same.

3. Nor does the act in question fail to provide for the payment of costs and expenses of such a case. We have seen that the object of the act is to divide the estate of the debtor, after it has been reduced to money, among his creditors, and that in this distribution all liens which existed at the time of the filing of the petition shall be preserved. In the absence of any superior lien upon the fund, it would be entirely competent for the court to order paid from the proceeds of the sale of the property of the debtor the costs and expenses of the case, because such funds are subject to be distributed among the plaintiffs; but it is not lawful for the court, in the distribution of the funds, to overlook the fact that a holder of a valid lien is entitled to have such lien paid out of the proceeds of the property on which the lien exists, in preference to any other claim not of higher dignity. Section 2718 of the Civil Code expressly provides

that creditors who become parties to such petition are charge-
able with their due proportion of the expenses of the proceed-
ing.    There is no more reason why any distinction should be
made in cases of this class than in cases at law.  · It is provided
by section 5385 of the Civil Code, that in all civil cases in any
of the courts of this State, except as otherwise provided, the
party who shall discontinue, fail, or be cast in such suit, shall
be liable for the costs thereof.    It is true that in equity cases
the judge may determine upon whom the cost shall fall.    Civil
Code, § 4850.    But there is no reason why in such determina-
tion between plaintiffs and defendants, in a case of this char-
acter, the cost should not be taxed against the party failing
in the case.    In the present case the mortgage-creditor was not
at fault; she did not bring on the litigation, nor raise any issues
with the plaintiffs.    On the contrary, they brought her unwil-
lingly into litigation by attacking the validity of her lien ; and
when such lien was determined in her favor, no good reason
existed why she should be taxed with any part of the costs and
expenses of the case.

   In the case of the *Lowry Banking Co.* v. *Abbott & Smith*, 87
*Ga.* 134, where a proceeding in the nature of a creditor's bill
had been filed against certain traders, the Lowry Banking Co.,
which held mortgages previously given to it by the debtor,
came in and made itself a party complainant, and set forth the
fact of the existence of its mortgages, and voluntarily litigated
with the other creditors.    This court held that such action upon
the part of the mortgage-creditor recognized the necessity for
the petition and ratified the filing of it, and thus it became
chargeable with its proportion of the expenses of the suit.    This
ruling is in harmony with section 2718 of the Civil Code, to
the effect that creditors who become parties to the petition, be-
fore the final distribution of the assets, become chargeable with
a due proportion of the expenses.    In the case of the *Central
Trust Co.* v. *Thurmond*, 94 *Ga.* 747, this court held :   "But the
scheme of the statute [traders' act] is that these fees [counsel
fees], as a part of the expenses of litigation, shall be borne in
some just proportion by all who come in to claim the fruits of
the proceeding; and even a voluntary party defendant who ul-

timately shares in the fund which is realized, and takes it by the judgment and decree finally rendered, is chargeable the same as he would be had he originally been a party coplaintiff." It will be noted in the latter case, that it is only parties who come in voluntarily that are chargeable with these expenses. In the case of *Lewis* v. *Edwards*, 92 *Ga.* 533, which was a proceeding instituted under the traders' act, this court ruled, that where the creditor held a valid mortgage covering all of the debtor's property for an amount sufficient to exhaust the proceeds, which mortgage was made and recorded before the filing of the creditors' petition, and the property of the debtor was converted into cash, and before the sale the mortgage-creditor, without becoming a party to the petition, foreclosed the mortgage and placed the fi. fa. in the sheriff's hands for collection, such creditor was not chargeable with the fees of attorneys for filing the petition and bringing the fund into court, nor with the costs of the petition; and it was further ruled: "As to them, there was no equity in the petition, no necessity for filing it, and they derived no benefit therefrom." If we apply this proper and just principle to the facts in this case, it must be held that so much of the fund in the hands of the receiver, realized from the sale of the mortgaged property, as was necessary to pay off the amount due on the mortgage, can not be diminished by the costs of the case and expenses of the receivership or any proportion thereof; and that so much of such costs and expenses as could not be met by the general fund arising from the sale of the property of the debtor, in excess of the amount due on the mortgage or not covered by the mortgage lien, should properly have been taxed against the plaintiffs. As to the mortgage-creditor in this case, there was no necessity for the receivership; and in the preservation of her lien as required by law, she must be treated as having a superior right to an appropriation of the proceeds arising from the sale of the mortgaged property to the full extent of the amount due thereon; and it would, under the facts as they appear, be inequitable to charge her with any of the costs or expenses in this case, it being certain that she relied alone upon her lien, recovered solely by virtue thereof, and did not undertake to secure any part of the general fund in the pro rata distribution to creditors.

4. It appears in this case that there were certain liens, to wit taxes against all the property of the debtor, of higher dignity, than the mortgage lien. These liens attached not only to the property covered by the mortgage, but to all other property in the hands of the receiver; and attaching to the whole property, they should first be paid out of the general fund. This is so because, as we have seen, the costs and expenses, when not provided for by the general fund, are properly to be taxed against the plaintiffs. The plaintiffs could in no manner be subjected to the payment of these tax liens; and inasmuch as they bind all the property of the estate, they should first be paid out of the general fund. Of course, in a case where the fund arising from the sale of the mortgaged property was the only fund in the hands of the receiver, that fund would be chargeable with the payment of these higher liens; but when there is also a general fund to which such higher liens likewise attach, which arose from the sale of other than the mortgaged property, or from the mortgaged property in excess of a sum sufficient to pay off the same, these tax liens should be paid from that fund; and in no other manner, upon facts like those of the present case, ought the fund arising from the sale of the mortgaged property, necessary to pay off the amount due on the mortgage, to have been appropriated. The court erred in taxing any part of the costs of the case and the expenses of the receivership against the fund arising from the sale of the mortgaged property necessary to pay the amount due on the mortgage, and also in making other rulings as herein indicated; and for this cause the judgment of the court below must be

*Reversed. All the Justices concurring, except Cobb, J., absent.*