HOUSTON ICE & BREWING CO. v. CLINT.

(Court of Civil Appeals of Texas. San Antonio. June 18, 1913. On Motion for Rehearing, June 28, 1913.)

1. APPEAL AND ERROR (§ 100*)—TEMPORARY INJUNCTION—RESTRAINING ORDER.

On an application for an injunction and order directing the clerk to issue a writ directed to a certain corporation and to its officers, attorneys, and employés, and to the sheriff of C. county, and his authorized deputies, commanding that they refrain from selling any property of the Ice & Gin Company of H., Texas, or any portion thereof, pending the further order of the court, but mentioning no time at

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

which the restraining order should expire, was a temporary injunction, and an appeal was properly perfected therefrom as such.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 670–680; Dec. Dig. § 100.*]

2. CORPORATIONS (§ 566*) — INSOLVENCY—RECEIVERS—SALE OF ASSETS—MORTGAGE LIENS —DISPLACEMENT—STATUTES.

Rev. Civ. St. 1911, art. 2135, provides that all moneys coming into the hands of receivers shall be applied to six different purposes in order, beginning with the payment of court costs and ending with judgments obtained before the appointment of a receiver. The only claim given preference over the mortgage liens being judgments rendered against the receiver for costs of action arising during the receivership, which article 2138 declares shall be a superior lien to a mortgage lien. Article 2128, subd. 2, authorizes the appointment of a receiver when a mortgagee seeks to foreclose his mortgage and sell the mortgaged property. *Held*, that such sections were merely declaratory of the rules previously existing for the distribution of assets of an insolvent, collected pursuant to a receivership; the mortgage lien referred to being not mortgage liens generally, but the mortgage lien of the creditor at whose instance the receiver was appointed, so that where a receiver of the mortgaged property of a corporation was appointed at the instance of the holder of the junior mortgage on the property, to which the first mortgagee was not a party, and in which proceedings he did not participate, the court had no authority to so conduct the receivership as to consume the property to the prejudice of the rights of the first mortgagee, nor could he be made liable for the costs and expenses of the receivership or the mortgaged property used to pay the same to the prejudice of his security.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

3. CORPORATIONS (§ 553*)—INSOLVENCY—RECEIVERSHIP.

Since the holder of a junior mortgage on the assets of an insolvent corporation had no interest in the property except in the surplus remaining after satisfaction of the first lien, the court should not entertain a proceeding at his instance to have the corporation's assets, which were insufficient to satisfy the first lien, administered through a receivership, the effect of which would necessarily be to merely sacrifice the security of the first lien holder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

4. RECEIVERS (§ 174*)—INSOLVENCY — JUDGMENT—SATISFACTION—INJUNCTION.

Where proceedings were instituted by a junior lien holder to administer the assets of an insolvent corporation through a receivership, other creditors were authorized by Rev. Civ. St. 1911, art. 2146, to sue the receiver, without leave of the court appointing him, to satisfy their claims.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 333–343; Dec. Dig. § 174.*]

5. RECEIVERS (§ 187*)—INSOLVENCY—CLAIMS —EXECUTION.

A judgment recovered against a receiver of an insolvent corporation cannot be enforced by seizure of the corporation's assets under an execution.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 377½; Dec. Dig. § 187.*]

6. CORPORATIONS (§ 566*)—INSOLVENCY—RECEIVERS—SALE OF ASSETS—INJUNCTION.

Where a junior lien holder obtained the appointment of a receiver of the assets of an insolvent corporation, which were only sufficient to pay the first lien, and judgment was recovered against the receiver, an injunction was properly issued restraining the sale of the corporation's assets under an execution; but, the senior lien holder having applied for a sale of the property in such proceedings, the court could properly order a sale, either by the sheriff, or by such mode as would be likely to result in the least expense.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

7. CORPORATIONS (§ 566*)—RECEIVERS—CONTINUANCE—SALE OF ASSETS—DISTRIBUTION.

Where the assets of an insolvent corporation were insufficient to pay more than the first mortgage, but a receiver was appointed at the instance of a junior lien holder, the receivership should not continue, but the property should be sold and the proceeds applied first to the payment of the costs of the suit instituted by the senior lien holder to recover his debt and foreclose his mortgage, then to the payment of the principal and interest of that debt, and the remainder, if any, to be paid to the receiver to be expended as directed by the court.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

8. RECEIVERS (§ 182*)—BOND—DUTY TO GIVE.

Under Rev. Civ. St. 1911, art. 4654, providing that before the issuance of an injunction a bond shall be given by the party applying for the same, except where the state is the complainant, a receiver, though an officer of the court, is not entitled to an injunction to restrain the sale of property in custodia legis without depositing the proper bond.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 360; Dec. Dig. § 182.*]

On Motion for Rehearing.

9. CORPORATIONS (§ 566*)—INSOLVENCY—ADMINISTRATION OF ASSETS — RECEIVERS — RECEIVER'S CERTIFICATES.

Where a receiver of an insolvent corporation was appointed at the instance of a junior lien holder, and was authorized to borrow money and issue receiver's certificates, the holders of such certificates were not entitled to a prior lien on the corporation's assets as against a first mortgagee of the corporation's property, who was not a party to the receivership proceedings, and was not shown to have had any knowledge thereof until the property had been taken by the receiver.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

10. APPEAL AND ERROR (§ 835*)—REHEARING —REVIEW—MATTERS OF FACT.

An appellate court cannot consider matters of fact, recited in the motion for rehearing, not found in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3241–3243; Dec. Dig. § 835.*]

Appeal from District Court, Brownsville County; W. B. Hopkins, Judge.

Action between the Houston Ice & Brewing Company and W. B. Clint, as receiver. From an order granting a temporary injunction, restraining the receiver from selling any property of the Ice & Gin Company

---

of Harlingen, Tex., until further order of the court, the Brewing Company appeals. Reversed and remanded, with instructions.

Baker, Botts, Parker & Garwood, of Houston, for appellant. Harbert Davenport and James B. Wells, both of Brownsville, for appellee.

FLY, C. J. This is an appeal from a temporary injunction, issued to prevent the sale of certain property consisting of a frame ice plant building, a frame gin building, a frame cold storage house, one Frick 20-ton ice machine and apparatus, one underground fuel oil tank, one three-stand Murray gin, with boiler, engine, and gin machinery complete, situated on a tract of land belonging to the St. Louis, Brownsville & Mexico Railway Company, in the town of Harlingen, Cameron county, Tex. The sale enjoined was one sought under an order of sale issued out of the district court of Harris county, and was enjoined at the instance of appellee, who had been appointed receiver of the Ice & Gin Company of Harlinggen, which owned the property described.

[1] In the order of the application for injunction it is recited that the court "was of the opinion that the same should not be granted," which opinion is followed by this language: "But the clerk of this court is ordered and directed to issue a writ directed to the Houston Ice & Brewing Company * * * and to its officers, attorneys, and employés, and to C. T. Ryan, sheriff of Cameron county, Tex., and his duly authorized deputies, commanding them and each of them to refrain and desist from selling any property of the Ice & Gin Company of Harlingen, Tex., or any portion thereof * * * pending the further order of this court." No time was mentioned at which the restraining order should expire, and while not denominated an injunction, it is to all intents and purposes a temporary injunction. It does not come within that category of restraining orders that are discussed in the case of Cole v. Forto, 155 S. W. 350. In that case and those cases cited in support of it, the hearing on the applications for injunctions were set down for certain days, and the restraining orders expired at those times. The order in this case constituted a temporary injunction pure and simple, and the appeal was properly perfected therefrom. The motion to dismiss the appeal is therefore overruled.

A bill of exceptions is found in the record containing the facts pertinent to this appeal, which has been approved by the trial judge and agreed to as a statement of facts by counsel for both parties, from which it appears that one Charles T. Brown, a citizen of New York, filed a suit in the district court of Cameron county against the Ice & Gin Company, to collect a debt of $5,000, which was secured by a second mortgage of the property described, and asked for and obtained the appointment of a receiver for the property of the defendant. The petition admitted the existence of a debt for $12,100 and a mortgage on the property in favor of appellant, which it was alleged was "prior in point of time to the mortgage and equitable lien of plaintiff." Appellee was appointed receiver on November 18, 1912, without notice to appellant, and took possession of the property. It is not controverted that appellant had a valid first lien on the property. The court authorized the receiver to borrow money, if the income was insufficient to meet the operating expenses, and, as there was no income, of course it was insufficient, and to issue certificates in denominations of $1,000 from time to time. No limit was put upon such issuance, and the certificates were to bear 10 per cent. interest. The receiver issued at least two for $1,000 each, and besides incurred other debts amounting to $1,600. Appellant sued for its debt in Harris county and foreclosed its mortgage, and an order of sale was issued, which was restrained in this proceeding. The facts show that the plant was not being operated by the receiver, and that he could not operate it so that it would pay expenses.

It is the contention of appellee that, the property being in the hands of a receiver appointed by the district court of Cameron county, no sale could be made under the order of any other court without the consent of the court granting the receivership; that the expenses of a receivership constitute a lien upon the corpus of the estate superior to all other liens, and that the matters complained of should be adjusted on final judgment in the district court, and this court has no jurisdiction of the matter. All these issues are herein fully considered and disposition made of them.

[2] By article 2135, R. S. 1911, old number 1472, it is provided that all moneys coming into the hands of the receiver shall be applied to six different purposes in their order, beginning with the payment of court costs and ending with judgments obtained before the appointment of a receiver. The enumerated claims are those accruing during the pendency of the receivership, except the costs, and all of them are given a preference lien on the earnings of the receivership. It will be noted that no preference is given in the article cited in any property except moneys that come into the hands of the receiver, and no mention is made therein as to property on which there may be mortgage liens; the only claims that are given any preference over any mortgage lien being judgments rendered against the receiver for causes of action arising during the receivership which "shall be a lien superior to the mortgage lien." Article 2138, R. S. 1911. "The mortgage lien" is not any and all mortgage liens, but must be some particular mortgage lien, and can refer to that mortgage

lien alone mentioned in subdivision 2 of article 2128, which authorizes the appointment of a receiver when a mortgagee seeks to foreclose his mortgage and sell the mortgage property. The judgment recovered against the receiver for a cause arising during the receivership arose out of the mortgagee's receivership proceedings; he invoked the appointment of the receiver, and he must pay the penalty, but the statute nowhere sanctions the doctrine that a first mortgage lien can be set aside for a receiver's debts, who was appointed without the knowledge or consent of the first mortgage lien holder. The statute nowhere authorizes the confiscation of mortgaged property to pay certificates given by a receiver for debts created by him, and no court can by its orders or decrees make a first mortgage lien, held by a party who has not invoked a receivership, and is not a party to it in any manner, second to the claims enumerated in the statute. Such construction of the statute would be utterly destructive of the rights of first lien holders, and put them at the mercy of second mortgage lien holders, who might invoke the aid of a court in the appointment of a receiver. The whole corpus of the estate might be consumed in unnecessary expenses, and the careful lien holder, who "had laid the flattering unction to his soul" that the laws of his state would protect his lien against all claims, would find it absolutely destroyed, and his debt forever lost. If the receiver's expenses would be superior to a first mortgage lien, they would have a preference over a vendor's lien, and the vendor be deprived of his land to pay a receiver for whose creation he was in no wise responsible. If there should be any concert of action, by which one mortgagee had a receiver appointed with the acquiescence of others, all who engaged directly or indirectly in obtaining the receivership might in some respects see the value of their security impaired, but certainly not one who holds a first lien on the property for which a receiver is appointed, who takes no part in the receivership proceedings and is absolutely ignorant of them.

In the case of McIlhenny v. Binz, 80 Tex. 1, 13 S. W. 655, 26 Am. St. App. 705, it is said: "Though the doctrine is of recent origin, it has become settled law in this country that in the final distribution of the assets of an insolvent railroad corporation, which has been placed in the hands of a receiver, there are certain claims against the fund which, under certain circumstances, are entitled to priority of payment over the debts of the corporation secured by mortgage upon its property." The authorities cited to support the proposition are decisions by the Supreme Court of the United States, and every one of them relating to railroad companies, and in cases in which the receiverships had been obtained by the mortgagees, and the preference is given on the income alone. As said by the Supreme Court in the

case of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339: "When a court of chancery is asked by railway mortgagees to appoint a receiver of railway property, pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement * * * as may, under the circumstances, * * * appear to be reasonable." In the Binz Case it was not contended that the corpus of the estate could be used, although covered by a lien, to pay off the expenses of operating the receivership, but the question was as to the right of priority of payment out of the earnings of the road while under the control of the court. While the claims in the Binz Case were not for operating expenses, but for labor performed just before the receivership was granted, the court placed them on the same footing as operating expenses, and, explaining the Binz Case, the Supreme Court, in Sullivan v. Briquette Co., 94 Tex. 541, 63 S. W. 307, held: "In that case this court held that a court of equity might apply the earnings of a railroad, while in the hands of a receiver, to the payment of claims for improvements made within a reasonable time before the receiver was appointed, in preference to the bond which held a first lien upon the road, but it was not asserted that such claims could appropriate the corpus of the property."

In the case of Farmers' National Bank v. Waco Electric Railway Co., 36 S. W. 136, the Court of Civil Appeals of the Third District, after stating that a certain line of decisions permitted the corpus of the estate to be used for expenses and given preference over the mortgage holders, at whose instance the receivership was granted, held: "A court administering the rights of litigants in accord with the principles of law and equity has no inherent right, simply by virtue of its judicial authority, to displace valid mortgage liens that are fixed upon the property, and which is subject to the liens, and require that such liens shall be postponed to claims which were not in existence at the time the mortgage liens were created, or are not based upon some contract or provision of the law which gives them a prior right over the mortgage liens."

In the case of Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858, the statute of Texas as to preferred claims in a receivership is construed to give such claims preference over the claims of prior mortgagees and every one, and the language is so broad and unguarded as to cover the corpus of the estate as against all mortgagees, whether parties to the receivership or not. However, that case was one in which the mortgagee had by intervention made himself a party to the receivership, and the authorities cited are

those in which the mortgagees had procured the receivership. That case also extends the extraordinary powers exercised in railroad receiverships to all other cases in which a receiver can be appointed.

We are of the opinion that the Texas statute is merely declaratory of the rules as to receivers which have been applied for a long time both in England and America, and that we should, in passing upon property in receiverships, be governed by well-established rules, and we find from them that the rights of first mortgage lien holders are carefully guarded from second or inferior lien holders, and the authority denied them to cast property into the hands of a receiver, and practically consume the security of the first lien holder in costs and expenses incurred by an extravagant and reckless receiver. In section 553, p. 604, Beach on Receivers, it is said: "The general rule that a receiver will not be appointed in favor of one incumbrancer in such a way as to affect the prior rights of another, or others, applies to equitable incumbrancers and creditors, as well as to the case of mortgagees at law. A court will appoint a receiver of property in favor of equitable creditors, although a legal creditor might obtain execution against it. The appointment is always made without prejudice to prior vested rights; and, where all the incumbrancers have equitable liens, a reference may be directed in order to determine such priorities; if legal they are to be remitted to a court of law."

This is a receivership obtained by a junior mortgagee, without making the prior mortgagee a party, and of course without any notice to such mortgagee. It is an action not justified or authorized by the statute, except under subdivision 4, which authorizes the appointment of a receiver "in all other cases where receivers have heretofore been appointed by the court of equity." The appointment of the receiver must be governed by the established rules in equity courts applicable to junior mortgagees. One of those rules is that "when the first mortgagee has not taken possession of the property, equity may properly interfere in behalf of subsequent mortgagees or equitable incumbrancers and creditors, and may appoint a receiver for their protection, but without prejudice to the rights of the first mortgagee." High on Receivers, § 682. No rule, consistent with justice and equity, can be formulated that will contravene the terms of the rule stated. To deny its authority is to trample upon, and often absolutely destroy, property rights. In the petition for the appointment of a receiver it was not alleged that the first mortgagee was doing anything to impair the value of the property or was conspiring with the mortgagor to defeat subsequent creditors. The first mortgage was admitted to be valid and subsisting, and appellant was not made a party to the proceedings. So far as appellant was concerned, there was no necessity for a receivership, and it is admitted in the petition that the defendant in the receivership proceedings was insolvent, that the mortgage of appellant is superior to that of the applicant for the receivership, and that the mortgaged property "is probably insufficient to discharge the said mortgage debt." It was a practical admission that the second mortgagee had no interest in the estate, and could not anticipate any payment on his debt from the administration of the estate. The facts set out in the statement of facts show that the receivership was granted on November 18, 1912, that the plant in controversy has been idle since that time, and could not be operated to pay operating expenses, but on the other hand, the receiver had already expended $2,000 on the plant, and had incurred for his compensation and that of attorneys the sum of $1,600, aggregating the sum of $3,600, indebtedness already incurred. At the same rate it is clear that the whole corpus of the property would soon be consumed, and the first mortgage lien holder left with no security whatever.

In a case similar to this, wherein the creditors obtained a receivership on property not of value more than a mortgage thereon, the Supreme Court of Georgia held that the mortgage holders, who were not parties to the receivership proceedings, were not chargeable with the expenses incurred by the receiver. Lewis v. Edwards, 92 Ga. 533, 17 S. E. 920. After approving the decesion in that case, the Georgia court, in Bradford v. Cooledge, 103 Ga. 753, 30 S. E. 579, held: "If we apply this proper and just principle to the facts in this case, it must be held that so much of the funds in the hands of the receiver realized from the sale of the mortgaged property as was necessary to pay off the amount due on the mortgage cannot be diminished by the costs of the case and expenses of the receivership, or any proportion thereof, and that so much of such costs and expenses as could not be met by the general fund arising from the sale of the property of the debtor in excess of the amount due on the mortgage, or not covered by the mortgage lien, should properly have been taxed against the plaintiffs. As to the mortgage creditor in this case, there was no necessity for the receivership; and, in the preservation of her lien as required by law, she must be treated as having a superior right to an appropriation of the proceeds arising from the sale of the mortgaged property to the full extent of the amount due thereon; and it would, under the facts as they appear, be inequitable to charge her with any of the costs or expenses in this case." The facts in the Georgia case were quite similar to those in this case.

In the case of Raht v. Attrill, 106 N. Y. 424, 13 N. E. 282, 60 Am. Rep. 456, a court had sought to operate an insolvent concern,

with the result of an issue of receiver's certificates amounting to about $400,000, and a sale of the property for $86,000; there being debts against it amounting to $800,000. A large amount of the money obtained on the certificates was used in improving the property, but it was held that the lien of a mortgage attached, not only to the land on which it existed at the time of its execution, but as changed by the improvements, and that the claims of creditors for money, labor, or material used in improvements acquired no lien, legal or equitable, superior to the mortgage lien.

The case of Dalliba v. Winschell, 11 Idaho, 364, 82 Pac. 107, 114 Am. St. Rep. 267, was one in which a receiver was appointed for a mine, and it was held: "It is clear to us, however, that a court of equity has no authority to place its receiver in charge of such property and operate the same, carrying on a general mining business, and when it turns out to be at a loss, as is likely to be the result in such cases, charge the same up as a preferred claim and lien against the property, to the prejudice and loss of the holders of prior recorded liens on' the same property."

In the case now before us the ginning season was over and ice would not be at a premium, and yet in that dull season for cotton and ice, repairs were made amounting to at least $2,000. There could be nothing in sight for the manufacture of ice and ginning of cotton for many months ahead, and yet expenses were incurred that would cut off nearly one-third of the corpus of the estate.

The consensus of opinions in the United States is opposed to destroying the mortgage lien of a person not a party to receivership, and to the consumption of the mortgaged property in paying the expenses of a receiver not desired by the mortgagee. There can therefore be no justification of such a course unless the Texas statute has declared that the lien on property mortgaged must be relegated to a place in subordination to the expenses of a receivership to which the mortgagee was not a party, and of which he had no notice. No such provision can be found in the statutes of Texas, and the only lien given in favor of the six preferred claims mentioned in the statute is "on all of the moneys coming into the hands of the receiver which are the earnings of the property in his hands." It is further provided in the statute (article 2135, R. S. 1911) that "the court shall see that the money coming into the hands of the receiver as earnings of the property in his hands is paid out on the claims against said receiver in the order of their preference as named above." There is no lien given on the corpus of the property to secure the statutory preferred claims, and in order to ascertain the existence of any such lien resort must be had to the rules of equity relating to the appointment of receivers, their powers, duties, and liabilities, and the powers of the court in relation thereto. Article 2155, R. S. 1911; Falfurrias Im. Co. v. Spielhagen, 103 Tex. 339, 127 S. W. 164. When we consult those rules we find, as hereinbefore indicated, that such preferred claims will not have a lien on the property of the person over whose estate a receiver has been appointed, superior or equal to that of a prior mortgagee who was not a party to the receivership proceedings. That rule is founded on the highest principles of morality and justice, and is the natural outcome of laws for the protection of contract and property rights. As said in the cited New York case of Raht v. Attrill: "It is best for all that the integrity of contracts should be strictly regarded and maintained, and that a rigid, rather than a liberal, construction of the power of the court to subject property in the hands of receivers to charges, to the prejudice of creditors, should be adopted." A strained or sublimated construction will not be placed upon the terms of the statute relating to receivers, but it will be reasonably construed, and no powers given or rights created unless they are plainly expressed therein, especially when to give them will be to impair the obligations of prior contracts and destroy or weaken prior property rights.

As said by the Supreme Court of Oregon, in the case of U. S. Investment Co. v. Portland Hospital, 40 Or. 523, 64 Pac. 644, 67 Pac. 194, 56 L. R. A. 627, when the property of lien holders not parties to a receivership suit was sought to be subjected to certain claims: "The receiver was not appointed at their request, nor upon their application, nor was there anything in the receivership proceedings to indicate to them that it was the intention to charge the mortgaged property with a preferred lien for debts contracted by the receiver. Where a mortgagee procured the appointment of a receiver, with power and authority to operate and conduct the business of the mortgagor, he cannot object to the payment of the expenses incurred for such ' purposes in preference to his lien. * * * But where the appointment is not made upon his application he has a right to insist that the debts contracted by the receiver shall not take precedence over his lien, although he may be a party to the suit in which the receiver was appointed."

Even if the statutes of Texas attempted, as they do not, to set aside rights acquired under contracts, for debts contracted by a receiver, it would be in derogation of the Constitution of the United States, which provides that no state shall pass any "law impairing the obligations of contracts." If mortgaged property can be consumed by the debts of a receiver, appointed without the knowledge of the mortgagee, in a proceeding to which he was not a party, any law authorizing such procedure would not only impair, but absolutely destroy, the obliga-

tion of the contract. It is not so expressed in the statute, and the Legislature' never intended that it should be done, and the law thereby made an engine of destruction against which there would be no defense, or from which there would be no escape. As said by the federal court in the case of Hanna v. Trust Co., 70 Fed. 2, 16 C. C. A. 586, 30 L. R. A. 201: "If it were once settled that a chancery court, through a receiver appointed on the petition of a junior mortgagee, could carry on the business of such insolvent corporations at the risk and expense of those holding the first or prior liens on the property of the corporation, such liens would have little or no value." If one-third or one-half of the value of the mortgaged property is consumed in five or six months, an early consumption of the whole body of the estate is not only possible but probable. The broad proposition laid down in Ellis v. Water Company, 86 Tex. 109, 23 S. W. 858, that the expense of administering the estate is to be charged first upon the net income, and if that be not sufficient, then upon the property itself or its proceeds upon sale, if it is intended to be applied to first mortgage lien holders who are not parties to the receivership proceedings, is not supported by statute or well-considered decisions, and such a rule would result in promoting fraud and utterly dismantling the protection thrown about property rights by constitutions and statutes. The decision in that case must be confined to the facts which show that the mortgage holders were parties to the suit. The statute neither directly nor by implication gives any lien on the corpus of the estate for the six claims named as being preferred claims, and courts have no authority, either upon general principles of equity or from the statute, for announcing a contrary doctrine. The proposition on which the decision in Ellis v. Water Co. is invoked by appellee is utterly at variance with the statement made in the opinion that "the receivership does not destroy any liens that may have been acquired before the appointment." The Ellis opinion seems to have rested on the assumption that the public had an interest in the waterworks system, but no such plea can be sustained in this case. The chances are there was only one such water system in the community, in which every one would be interested, as every one uses water to a greater or less extent, but not so with a gin or ice plant. There might be several of them, and many people would have no interest whatever in them.

The proposition advanced in this opinion in regard to mortgaged property not being subject to the expenses of a receivership to which the mortgagee is not a party is sustained in the case of Houston Ice Co. v. Fuller, 26 Tex. Civ. App. 239, 63 S. W. 1048. In that case it was held: "We are of the opinion that the court erred in adjudging the expenses of the receivership to be a superior lien to the appellant's mortgage. The receivership was not ordered at the suit of the appellant, and it would be inequitable to exhaust his security with the expenses of a receivership taken out at the instance of other parties. High, Rec. § 796, p. 730. Rev. St. art. 1472, has application where the receivership is at the instance or for the benefit of the lien holder." That proposition is supported, not only by the authorities hereinbefore cited, but many others, and is founded upon the rules of honesty and justice. Beach on Rec. §§ 402, 414, pp. 426–440; Union Trust Co. v. Railway, 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963; Meyer v. Johnston, 53 Ala. 237. The last case, as well as the case of McLane v. Railway, 66 Cal. 606, 6 Pac. 748, is cited to sustain the proposition enunciated in the Ellis Case, but both of them were cases in which the mortgagees sought the receivership. As said by Beach in the citation last made: "Receiver's certificates do not in any particular affect the rights of lien holders who are not parties or privies to the receivership proceedings. It is one of the elements supporting the doctrine, and a strong reason for the exercise of the power to issue certificates, that those who cause the property to be placed in the custody of the court are to be considered as consenting to whatever may be necessary to preserve and protect it." The power to issue such certificates is a dangerous one, often, as has been well said, being "merely a license to do mischief." Making such certificates a lien on the corpus of property of mortgagees invoking a receivership is as far as any court of equity should ever go; the justification for that being that they who litigate must pay the costs.

[3] In this case the applicant for the receivership had no interest in the property except in so far as there might be a surplus after paying off the first lien, and he had no right, and could not be endowed with the right by the court, to needlessly sacrifice the property of the first lien holder. Under the allegations of the petition for the receivership, the court should not have entertained the suit, which could result in nothing but an impairment or sacrifice of the mortgaged property. Galvin v. McConnell, 53 Tex. Civ. App. 486, 117 S. W. 211; Bank v. Campbell (Sup.) 140 S. W. 430.

[4] On December 14, 1912, about a month after the receiver was appointed by the district court in and for Cameron county, appellant filed suit in the Fifty-Fifth district court of Harris county on three notes, amounting in the aggregate to $12,100, and asked for and obtained a judgment for the amount, together with a foreclosure of the lien on the property in question. The defendants in the case were A. L. Strang, the Ice & Gin Company of Harlingen, Charles T. Brown, who applied for the receiver, and

W. B. Clint, the receiver of the Ice & Gin Company. The judgment was rendered on March 10, 1913. Under the provisions of article 2146, R. S. 1911, the suit against the receiver was fully authorized without leave of the Cameron county district court. The judgment was therefore regular and valid. That article further provides that if a judgment is recovered against the receiver, it shall be the duty of the court, doubtless the one in which the receivership is pending, to order the receiver to pay the judgment out of any funds in his hands. The judgment being valid the only question that could arise would be as to the method of satisfying it.

[5, 6] There is no authority for the seizure of the property under execution. Harrison v. Waterberry (Sup.) 27 S. W. 109. It follows that the writ restraining the sale of the property under execution was properly granted, but as appellant, in connection with the injunction proceedings, applied to the court for a sale of the property, that application should have been granted. Appellant submitted itself fully to the jurisdiction of the court, and showed to the court all of the circumstances and conditions surrounding the property, and that it should be sold, and no reason appears why it should not be sold by the sheriff. It should be a question of costs alone, and appellant should be given the benefit of that method which will cost the least money. The sale made by the sheriff would be valid, and the court can so direct it. Beach, Rec. § 223, p. 214; Ellis v. Water Co., 86 Tex. 115, 23 S. W. 858; Walling v. Miller, 108 N. Y. 173, 15 N. E. 65, 2 Am. St. Rep. 400.

[7] It appears from the facts in this case and the admissions of Brown, who caused the receiver's appointment, that the property will not more than pay off the first mortgage, and it clearly appears that the property, instead of producing an income, will eventually consume itself, and there is no justice or equity in continuing the receivership, but the land should be sold and the proceeds applied first to the payment of the costs of the suit in Harris county and the principal and interest of appellant's debt, and the remainder, if any, to be placed in the hands of the receiver to be expended as directed by the court. Abbey v. Railroad, 5 Tex. Civ. App. 261, 23 S. W. 934; Scott v. Crawford, 16 Tex. Civ. App. 477, 41 S. W. 697.

[8] The statute (article 4654, R. S. 1911) requires that before the issuance of the writ of injunction a bond shall be given by the party applying for the same. There is only one exception to that requirement, and that is in case where the state is the complainant. It may see anomalous to require an officer of the court to give the bond in question when the property is in custodia legis, but that is a matter addressed to the legislative rather than the judicial branch of the state government. Paine v. Carpenter, 51 Tex. Civ. App. 191, 111 S. W. 430. While it was unnecessary to issue the restraining order after the execution creditor had submitted itself to the jurisdiction and prayed that an order of sale be issued, yet if it had been necessary and proper, it should not have been issued until a bond was given by the receiver; and the failure in this case to require the bond renders the writ invalid. The court could by contempt proceedings have protected the property from seizure, but when the remedy by injunction was invoked the receiver, like any one else, should have been required to give a bond. He is required to give bond on appeal, and the reasons for exempting him in that case would be as strong as exempting him in cases of injunction. Article 2144, R. S. 1911.

The restraining order will be set aside, and the cause remanded to the district court, with instructions to grant the prayer of appellant for a sale of the property, and that the court issue an order to the sheriff of Cameron county to sell the property in controversy, after due and legal advertisement, and that the proceeds of such sale be applied first to the payment of the judgment, interest, and costs of the Harris county district court, and that the balance, if any, be delivered into the hands of W. B. Clint, receiver, to be expended under the orders of the court.

Reversed and remanded, with instructions.

## On Motion for Rehearing.

[9] Appellant was not a party to the receivership proceedings, nor was it shown that it had any knowledge of such proceedings until the property had been taken possession of by the receiver. It then sued to foreclose its lien and made the receiver a party to the suit. The parties to whom the certificates were issued were put on notice by the receivership proceedings that appellant had a prior superior lien on the property. No authority has been cited that holds that the mere discovery that a receiver had been appointed would estop a lien holder from asserting his lien as against the holders of receiver's certificates. The authorities cited by appellant make no such holding. In all those cases the lien holders were parties to the receivership proceedings.

As said in Kneeland v. Luce, 141 U. S. 491, 12 Sup. Ct. 32, 35 L. Ed. 830: "The bondholders had no legal mortgage thereon, but only an equitable lien. The bondholders, who now object to the priority of the receiver's certificates, were parties to the suit in which the decree was rendered, by their trustees and committee. No appeal was taken from that decree, nor were any steps taken to set it aside. * * * Under all the circumstances of the case, the bondholders are precluded from claiming priority over the receiver's certificates, which were issued for the pur-

pose of preserving the mortgaged property."

In the case of Union Trust Co. v. Illinois Mid. R. R. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963, it was said: "As to receiver's certificates issued, with the sanction of the court, after the trustees become parties, the purchasers and holders should be accorded such rights as, by the settled principles of equity, are accorded to those who deal with judicial tribunals having jurisdiction in the premises."

If there were "many interveners, having secured and unsecured claims," as stated by appellee, the record in this case fails to disclose that fact.

There is a statement of facts in this record, agreed to by the parties and approved by the court, from which this court obtained the facts found by it, and not from any "ex parte statement of the mortgage creditor." In that statement it appears that the debt due to appellant was for the purchase money of the property held by the receiver, and that the property was covered by a mortgage lien in favor of appellant to secure the payment of the purchase money, and that any other lien on the property "was subordinate and junior to that lien." It is further stated in the statement of facts "that the Houston Ice & Brewing Company was not made a party to the suit." There is nothing in the record to support the assertion that "each separate piece of machinery" is mortgaged, "and the mortgage held by as many different persons." On the other hand, the record shows only two mortgages on the property, the first held by appellant and the second by the man who induced the appointment of a receiver.

[10] Of course this court cannot consider matters of fact recited in the motion for rehearing, but not found in the record, and this court is impelled to the view that the property has been managed so as to incur a heavy debt by the facts of the case as presented by the record. It is stated in the bill of exceptions, which is by agreement made the statement of facts, "that the income from said plant was in fact insufficient to pay the expenses of operation," and, in running the plant and making repairs, attorney's fees, and compensation for the receiver, had amounted to $1,600. It further appears from the statement of facts: "That on May 14, 1913, and for a considerable time prior thereto, the said Clint, receiver, had ceased operating the Ice & Gin Company of Harlingen, and that said plant has been and is now idle. That the said receiver was unable to operate said plant so that it would pay operating expenses." This may not be "bad management" of the property, but it is certainly management which will result in disaster to the interests of appellant. With such management it is only a question of time when the property will be consumed in expenses.

The motion for rehearing is overruled.