## FARMERS' LOAN & TRUST CO. *v.* GRAPE CREEK COAL CO.

*(Circuit Court, S. D. Illinois.   May 7, 1892.)*

CORPORATIONS — FORECLOSURE OF MORTGAGE — RECEIVER'S CERTIFICATES—EQUITY JURISDICTION.

In a suit to foreclose a mortgage on the property of a coal mining company the court has no power, as against the objection of even a small minority of the holders of the mortgage bonds, to authorize a receiver appointed in the suit to issue certificates which shall be a first lien on the mortgaged property, in order to enable him to continue the operation of the mines.

In Equity.   Bill by the Farmers' Loan & Trust Company against the Grape Creek Coal Company to foreclose a mortgage.   A receiver was appointed, and he now asks leave to issue receiver's certificates.

*Runnells & Burry,* for Farmers' Loan & Trust Co.

*W. J. Calhoun,* for J. G. English, receiver.

*Hess & Johnson,* for Travellers' Ins. Co. and other objecting bondholders.

GRESHAM, Circuit Judge.   The defendant, a private corporation, whose chief business is mining and selling coal, conveyed to the complainant, in trust, lands and two coal mines in Vermilion county, Ill., to secure an issue of bonds amounting to $500,000.   An installment of interest was allowed to remain due for more than six months, and this bill was filed to foreclose the trust deed.   Joseph G. English, who was appointed receiver, asks for an order authorizing him to issue receiver's certificates not exceeding in all $24,000, which shall be a first lien upon the trust property, to enable him to pay taxes now due, amounting to $3,428.64, take up outstanding certificates amounting to $6,400, which were issued under an order of the Vermilion circuit court, in a suit to foreclose the same trust deed, and to continue the operation of the mines. The receiver represents that, with additional working capital, he could operate the mines profitably, and better protect them.   The holders of 75 per cent. of the bonds and the corporation join in the receiver's request.   The holders of the remaining 25 per cent. resist the application. The corporation is insolvent.   It is not claimed that the receiver is without means to pay taxes, and it is chiefly to enable him to continue the operation of the mines for anticipated profits that he desires authority to issue certificates.

When it becomes necessary for a court of chancery to take possession of property which is the subject of litigation, by placing it in the hands of a receiver, all expenses incident to its safe-keeping and preservation are properly chargeable against it; and, if there be no income, such expenses will be paid out of the proceeds of the *corpus* before distribution to lien or other creditors.   It does not follow, however, that because property of a private corporation or a natural person may be thus protected and preserved before sale, that, in order to raise money to operate it for profit, a court may place a charge upon it in advance of exist-

ing liens. Pending a suit to foreclose a mortgage executed by a railroad corporation, the road may be operated by a receiver, and debts contracted for labor, supplies, and other necessary purposes before as well as after the appointment of a receiver, may be made a first lien upon income, and, if that is not adequate, upon the *corpus* of the property. In the exercise of this exceptional and extraordinary jurisdiction, which is of comparatively recent origin, courts have entered orders making receiver's certificates first liens on the mortgaged property. This has been done, however, on grounds not applicable to mortgages executed by private corporations. A railroad corporation is a *quasi* public institution, charged with the duty of operating its road as a public highway. If the company becomes embarrassed and unable to perform that duty, the courts pending proceedings for the sale of the road will operate it by a receiver, and make the expense incident thereto a first lien. This is done on account of the peculiar character of the property. It is generally mortgaged to secure bonds, and persons who invest in such securities know that the mortgage rests upon property previously impressed with a public duty. Private corporations owe no duty to the public, and their continued operation is not a matter of public concern. It is only against railroad mortgages that the supreme court of the United States has sustained orders giving priority to receiver's certificates representing particular indebtedness, and, as already stated, then only on principles having no application to a mortgage executed by a private corporation owing no duty to the public. *Fosdick* v. *Schall*, 99 U. S. 235; *Barton* v. *Barbour*, 104 U. S. 126; *Miltenberger* v. *Railroad Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140; *Union Trust Co.* v. *Railroad Co.*, 117 U. S. 434, 6 Sup. Ct. Rep. 809; *Wood* v. *Trust Co.*, 128 U. S. 421, 9 Sup. Ct. Rep. 131; *Kneeland* v. *Trust Co.*, 136 U. S. 89, 10 Sup. Ct. Rep. 950; *Morgan's, Etc., Co.* v. *Texas Cent. Ry. Co.*, 137 U. S. 171, 11 Sup. Ct. Rep. 61.

In *Wood* v. *Trust Co.* the court said:

"The doctrine of *Fosdick* v. *Schall* has never yet been applied in any case except that of a railroad. The case lays great emphasis on the consideration that a railroad is a peculiar property, of a public nature, and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only point it out."

In *Kneeland* v. *Trust Co.*, *supra*, in discussing the jurisdiction of the chancellor to displace the lien of a railroad mortgage, the court said:

"Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because, in a few specified and limited cases, this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all un-

secured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company, or to work for it; and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

And further on in the same opinion the court said:

"If, at the instance of any party rightfully entitled thereto, a court should appoint a receiver of property, the same being railroad property, and therefore under an obligation to the public of continued operation, it, in the administration of such receivership, might rightfully contract debts necessary for the operation of the road, either for labor, supplies, or rentals, and make such expenses a prior lien on the property itself."

In the language above quoted, there is a plain implication that the limited power which courts may exercise in displacing the liens of railroad mortgages should not and cannot be extended to mortgages executed by private corporations. The court is not asked to subvert the lien of the mortgage on the ground that the trustee or bondholders have got possession of anything which, in equity, belongs to general creditors. It is to enable him to operate the mines for the benefit of bondholders, against the wish of part of them, that the receiver desires to be invested with authority to issue certificates which shall be a prior lien upon the property embraced in the trust deed. Extensive as are the powers of courts of equity, they do not authorize a chancellor to thus impair the force of solemn obligations and destroy vested rights. Instead of displacing mortgages and other liens upon the property of private corporations and natural persons, it is the duty of courts to uphold and enforce them against all subsequent incumbrances. It would be dangerous to extend the power which has been recently exercised over railroad mortgages, (sometimes with unwarranted freedom,) on account of their peculiar nature, to all mortgages. The power does not exist, and the application is denied.