FIDELITY INSURANCE, TRUST & SAFE-DEPOSIT CO. v. ROANOKE IRON CO.

(Circuit Court, W. D. Virginia. March 18, 1895.)

CORPORATIONS—RECEIVER'S CERTIFICATES.

> A court of equity has no power, without the consent of all lien creditors, to authorize the receiver of an insolvent private corporation, whose business is not affected with any public interest, to issue certificates which will be a paramount lien upon its property, for the purpose of carrying on its business, unless it be necessary to do so in order to preserve the existence of the property or franchises.

This was a suit by the Fidelity Insurance, Trust & Safe-Deposit Company against the Roanoke Iron Company for the foreclosure of a mortgage. The receiver of the property of the defendant company petitioned for leave to issue receiver's certificates, for the purpose of carrying on the business of the company. Denied.

Watts, Robertson & Robertson and Penn & Cocke, for petitioner.

J. W. St. Clair and Griffin & Glasgow, for some of the lien creditors opposing.

PAUL, District Judge. The receiver in this cause has presented a petition to the court praying for authority to issue receiver's certificates to the amount of $100,000, for the purpose of recommencing and carrying on the business of producing iron from the ore at the works of the defendant company. He has submitted to the court an itemized estimate, upon which he claims that, if authorized to issue the certificates as prayed for, he can make iron at the defendant company's works for $7.11 per ton, including all items of the cost of production. He further claims that such iron can be sold at the works at $7.85 per ton, making a profit of 74 cents per ton on the iron produced. He states that the output of the furnace for the last year of its operation was 47,037 tons; that there is no

reason why the furnace should not do equally as well; and claims that the profits would therefore be: For pig iron, $34,800; for rolling mill, $10,000; to which he adds what he denominates "store profits," amounting to $2,500, and "rents," $1,200,—making an aggregate of net profits amounting to $48,500. The petition of the receiver is opposed by a considerable number of the creditors of the defendant company holding first-mortgage bonds and supply liens on the property, who resist the issuance of receiver's certificates to have priority over their liens.

It is not necessary to discuss the facts as presented in the receiver's statement. The court is confronted by the very important question as to its authority to issue receiver's certificates, without the consent of all the lien creditors, to enable the receiver of a private corporation to carry on the business of the insolvent company. This is a question which has not heretofore been discussed or decided in the circuit court of this district. As there are now a number of private corporations in this district in the hands of receivers, the question is one of great importance, and the court will consider it with a view to its settlement, so far, at least, as this court is concerned.

Receiver's certificates must necessarily have priority over all the liens of other creditors, thus displacing all prior liens to the extent of the amount of such certificates issued. The authority of a court of equity to issue receiver's certificates for the purpose of carrying on the business of a corporation of whose property the court has taken control is of very recent origin, and is the outgrowth of the necessity of keeping in active operation a railroad corporation that has been brought into the possession and control of a court of equity by the appointment of a receiver. As applied to railroad corporations, no question can be raised, in view of the numerous decisions of the supreme and other federal courts of the United States. It has received full and ample discussion in the leading cases, and the conclusion of this doctrine, as stated by Mr. Justice Bradley, in Wallace v. Loomis, 97 U. S. 146, is that: "The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot, at this day, be seriously disputed. It is a part of that jurisdiction, always exercised by the courts, by which it is its duty to protect and preserve the trust fund in its hands. It is undoubtedly a power to be exercised with great caution, and, if possible, with the consent or acquiescence of the parties interested in the fund." See, also, Fosdick v. Schall, 99 U. S. 235; Barton v. Barbour, 104 U. S. 126; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809. But, even in regard to a railroad property in the hands of a court of equity, as was said by Chief Justice Waite in Shaw v. Railroad Co., 100 U. S. 612:

"The power of the courts ought never to be used in enabling railroad mortgagees to protect their securities by borrowing money to complete unfinished roads, except under extraordinary circumstances. It is always better to do what was done here whenever it can be done; that is to say, reorganize the enterprise on the basis of existing mortgages as stock, or something which is equivalent, and by a new mortgage, with a lien superior to the old, raise the money which is required, without asking the courts to engage in the business of railroad building. The result, so far as incumbering the mortgage security is concerned, is the same substantially in both cases, while the reorganization places the whole enterprise in the hands of those immediately interested in its successful prosecution." In all the cases cited the trust fund consisted of railroad property which the public convenience and necessities, and not merely the private interests of stockholders and bondholders, required should be kept up as a going concern. The principle on which the doctrine rests is that railroad companies are considered public corporations which are not controlled and managed alone for the personal benefit of the individual stockholders. A railroad is an enterprise in which all the people living in the territory through which it runs have an interest. It is created by the will of all the people of the state, as expressed through their representatives, and it exercises its powers and franchises only by their permission. Its extensive uses, and the vast benefits it is intended to confer on the people of the state by whose laws it is created, make it indispensable to the welfare and comfort of the general public that it be preserved and kept in continuous operation. It would be a serious calamity to the people of any section of the country to allow a railroad of any importance, constructed for their benefit, to be stopped in its operations for lack of means to keep it alive and pay its running expenses. We cannot deduce from these reasons for exercising this extraordinary power of a court of equity in dealing with the interests of a railroad company any authority for the court to deal in the same way with a private corporation. The latter is created solely with reference to the pecuniary advantage of the individuals who take part in its creation and enjoy the benefits to accrue from the profits arising out of its operations. The public has no interest in its existence or continuance, other than what may accrue to the people of the particular locality in which a mill, factory, or furnace may be established. This is too vague and indefinite to be the subject of the care and protection of a court of equity. This question has yet to come before the supreme court of the United States for direct and final decision. Counsel for the receiver have cited in argument High, Rec. § 312, which says, in substance, that the question of the power of a court of equity in administering the assets of an insolvent corporation, other than a railway company, by the appointment of a receiver to issue receiver's certificates, creating a lien thereon to have priority of mortgage indebtedness, has given rise to some conflict of authority, and is not yet so definitely determined as to be free from doubt. The other authorities quoted, Jerome v. McCarter, 94 U. S. 734, and Kent v. Iron Co., 144 U. S. 75, 12 Sup.

Ct. 650, both cases growing out of the same conditions, so far as concerns the question before the court, do not sustain the position contended for. In Jerome v. McCarter, 94 U. S. 734, the receiver's certificates were issued for the distinct purpose of preserving the property and franchises of the company. The lands, granted by an act of congress and covered by the mortgage, reverted to the United States, unless the ship canal should be finished within a fixed period, and the period was passing away, and the certificates were issued in order to complete the canal and save the property. So imperative was the necessity that the lien creditors, all of whom were in court, made no objection to the issuing of the certificates. Nor did they contest their right of priority in the court below or in the supreme court. The question was raised by the assignees in bankruptcy of the insolvent company, who had no interest in the property other than what should remain after satisfying all the lien debts, including the receiver's certificates. The same position is taken by the court in Kent v. Iron Co., 144 U. S. 75, 12 Sup. Ct. 650. The distinction between railroad and private corporations has been considered and passed upon by several of the circuit courts of the United States. In Bound v. Railway Co., 50 Fed. 312, Simonton, J., said: "Railroads are of public concern not simply because they benefit the public. The sovereign power has contributed to their construction in a way in which none but the sovereign can contribute, and they are devoted to a public use. It does not follow, because other kinds of property are of great benefit to the public and are devoted to a public use, that they also come within this category, and as such that the courts will see that they are maintained." The same view was held by this court in Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. 436. In Farmer's Loan & Trust Co. v. Grape Creek Coal Co., 50 Fed. 481, it was held that: "In a suit to foreclose a mortgage on the property of a coal-mining company, the court has no power, as against the objections of even a small minority of the bondholders of the mortgage bonds, to authorize a receiver appointed in the suit to issue certificates which shall be a first lien on the mortgaged property, in order to enable him to continue the operation of the mines." Syllabus. In this case, Gresham, J., after quoting from Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, says: "In the language above quoted, there is a plain implication that the limited power which courts may exercise in displacing the liens of railroad mortgages should not and cannot be extended to mortgages executed by private corporations. * * * Extensive as are the powers of courts of equity, they do not authorize a chancellor to thus impair the force of solemn obligations and destroy vested rights. Instead of displacing mortgages and other liens upon the property of private corporations and natural persons, it is the duty of courts to uphold and enforce them against all subsequent incumbrances." The court has given the question careful consideration; and in view of the principles on which the authority of courts of equity to order the issuance of receiver's certificates in any case rests, and in view of the weight of the authorities cited, the court is clearly of opinion that it has no power to authorize a re-

ceiver of a private corporation to issue certificates to be a paramount lien for the purpose of carrying on the business of an insolvent corporation, when all the lien creditors do not consent thereto, unless it be necessary to do so in order to preserve the existence of the corporate property and its franchises. Such is not the condition in this case, and the prayer of the petition is denied.