FIRST STATE BANK OF HUBBARD et al. v. HUBBARD FARMERS' OIL & GIN CO. et al. (No. 5506.)

(Court of Civil Appeals of Texas. Austin. June 23, 1915.)

CORPORATIONS ⟨key⟩480—FORECLOSURE OF MORTGAGES—PRIORITY—RECEIVERSHIP.

In a suit to foreclose a mortgage lien on the plant of a private corporation engaged in the oil business, the court cannot give priority to receivers' certificates and expenses of the receivership, where such receivership was obtained by a junior mortgagee over the objection of the first mortgagee, since the corporation is not affected with any public interest.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ⟨key⟩480; Mortgages, Cent. Dig. §§ 290–323, 326, 455.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by the First State Bank of Hubbard against the Hubbard Farmers' Oil & Gin Company and others. From a judgment subordinating plaintiff's lien to other claims, plaintiff and others appeal. Reversed and remanded.

See, also, 160 S. W. 1132.

This suit was brought on the 7th of July, 1913, by First State Bank of Hubbard against Hubbard Farmers' Oil & Gin Company, a private corporation, to recover an indebtedness evidenced by a note and overdrafts secured by a mortgage on the plant of said company, and for foreclosure of said mortgage thereon. W. C. Horne, Eb Johnson, J. A. Madera, Percy Wood, W. E. Berry, and Will Bankston were likewise made parties defendant, on the ground that they were

guarantors of said indebtedness, and recovery was also sought against them. Thereafter, on August 8, 1913, at the instance of said defendants, the court appointed O. O. Condor receiver of the properties of said oil company, who took charge thereof and proceeded to administer said trust. On September 2, 1913, upon hearing, the case was dismissed as to said guarantors, and judgment rendered in favor of First State Bank of Hubbard against said Hubbard Farmers' Oil & Gin Company, for the sum of $18,937.-95, with interest. On September 2, 1913, the receiver filed his application for authority to issue receiver's certificates, which was opposed by appellant; but the court on the 8th of said month granted authority to issue such certificates in the sum of $5,000, by virtue of which receiver's certificates were issued for said amount and purchased by intervener, Dawson State Bank. During the administration of such receivership said property was destroyed by fire, at which time it was insured in various companies in the total amount of $27,634. The receiver, by permission of the court, settled with said companies for the sum of $21,000, which policies contained loss clauses payable to appellant as its interest might appear. On June 26, 1914, the receiver filed his final report, showing that he had received from all sources $23,234.17, of which $20,835.90 represented the corpus of said plant owned by said Oil & Gin Company. Appellant filed its motion on June 13, 1914, to require the receiver to pay its debt of $18,-937.95, established by the judgment of the court, the application stating that said amount had been established by the court as a preference lien. The following parties filed pleas of intervention in said cause: Robert Priddy and Eb Johnson on February 18, 1914; Dawson State Bank on April 24, 1914; R. M. Vaughan, on July 28, 1914; the Waco Machinery & Supply Company on June 30, 1914; and the Western Engineering Company on April 9, 1914—to all of which appellant filed its exceptions. The court denied appellant's motion to require the receiver to pay its debt, and he was ordered to pay all court costs, including cost of the receivership proceeding, as follows: Compensation allowed the receiver $2,000; compensation allowed R. M. Vaughan for legal services in the receivership proceeding, $1,500; Dawson State Bank, $5,388.49 on receiver's certificates; and after the payment of said several sums the receiver was ordered to pay appellant the balance remaining in his hands. Provision was made, if any balance remained, for the payment of the interveners, but the total amount in the hands of the receiver was not sufficient to pay appellant and the claimants first named. At the time the suit was filed said Oil & Gin Company was insolvent and not being operated, and the court found that unless a receiver was appointed the property, if sold, would bring from one-fourth to one-third less than its value, and it could obtain no money with which to operate during the ensuing season and would be closed down; that if a competent manager was appointed it might be run at a profit. From which judgment appellant and the Waco Machinery & Supply Company have prosecuted this appeal.

The above statement is taken in part from appellant's brief and is concurred in by some of the appellees, the substance of whose supplemental statement we have incorporated herein.

J. J. Averitte and Wear & Frazier, all of Hillsboro, for appellants. Frank T. West, of Waco, J. Dudley Stephenson and P. W. Robertson, both of Hillsboro, Albert Boggess, of Waco, R. M. Vaughan, of Hillsboro, and Woods & Kerr, and L. B. Cobb, all of Corsicana, for appellees.

RICE, J. (after stating the facts as above). Appellant challenges the correctness of said judgment postponing the payment of its claim to those of the other claimants, contending that by reason of the facts stated its debt was prior to any of the other claims so preferred, and should be paid first, and this is the principal contention involved in this appeal.

We think there can be no question but what the proceeds of the policies of insurance should be treated as standing in the place of the original property, charged with all the obligations outstanding against it. It will be recalled that the receivership was not put in motion by the appellant, nor the certificates issued with its consent, but, on the contrary, was resisted by it. Being defeated in this, it could not be held, we think, that such judgment would bar appellant's right to priority of payment out of such fund secured by its prior mortgage thereon, nor prevent its objecting to the payment of expenses of the litigation instituted by a junior mortgagee, as here attempted.

If this suit involved a railroad or public service corporation then authority is not lacking to sustain the judgment of the court; but the Hubbard Farmers' Oil & Gin Company is a private corporation to whom appellant had furnished money, which was secured by a first mortgage, to which priority was awarded, and the application for a receiver was made by a junior mortgagee, without appellant's sanction or authority and over its objection. In International Trust Co. v. Decker Bros., 152 Fed. 78, at page 82, 81 C. C. A. 302, at page 306, 11 L. R. A. (N. S.) 152, at page 156, in discussing a similar question, the court said:

"A practice has grown up incident to railroad receiverships, which, indeed, has become firmly established by judicial sanction, whereby, the receiver is considered to be legally competent under conditions of insolvency, and perhaps for other causes peculiar to the business of public service corporations, to issue receiver's certificates, for the purpose of paying labor claims,.

within prescribed limits as to time, and other incidental and necessary expenses for carrying forward the business of the corporation, so that it may continue a going concern, and thereby to supplant or supersede the liens of mortgage claimants. The reasons, however, for the authority, are peculiar to railroad corporations, and to the enterprises in which they engage, the most salient of which are that railroads are quasi public concerns, through which the public interests and convenience, as well as private ownership, are largely subserved, and that a maintenance of the roadway and equipment, and a continuation of the business and operation of the road, are essential to the preservation of the mortgage security. Any person or corporation, in taking and accepting a mortgage upon the property of a railroad, therefore, does so with reference to the law governing such corporations, and with knowledge, presumably, of the legal condition that, for the purpose of keeping the enterprise a going concern, receivers may be appointed and receiver's certificates issued in appropriate cases, which, in their force and effect, will supplant the mortgage, and hence with the understanding that the mortgage lien may be superseded by the necessary expenses for continuing the business and thereby preserving the security of the mortgage. These principles have been established by numerous adjudications in the Supreme Court of the United States. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Barton v. Barbour, 104 U. S. 126, 26 L. Ed 672; Miltenberger v. Logansport, C. & S. W. R. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Union Trust Co. v. Illinois Midland R. Co., 6 Sup. Ct. 809, 117 U. S. 434, 29 L. Ed. 963; Wood v. Guarantee Trust & S. D. Co., 128 U. S. 416, 9 Sup. Ct. 131, 32 L. Ed. 472; Kneeland v. American Loan & T. Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379. Neither the rule nor the reasons which go to its support have application to corporations engaged in strictly private enterprise. The Supreme Court of the United States has not as yet expressly said this, but it has so strongly observed the distinction in that relation between the two characters of corporations that there is left but little room for conjecture as to what its determination in a case calling for a decision in the premises would be. It is said in Wood v. Guarantee Trust & S. D. Co., supra, that: 'The doctrine of Fosdick v. Schall has never yet been applied in any case, except that of a railroad. The case lays great emphasis on the consideration that a railroad is a peculiar property, of a public nature, and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only point it out.' And so in Kneeland v. American Loan & T. Co., supra: 'It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens.'

"The federal courts, in both the circuit and district, have, however, passed upon the question, and are uniform in holding that a receiver of a private corporation has no such latitude in legal contemplation as it respects the issuance of receiver's certificates as do those of a railroad or public service corporation, and that his authority for displacing mortgage liens, unless by the consent of the mortgagee, extends only to the necessary expenditures incident to administering the assets and preserving the property from deterioration pending the winding up of the business and the settlement of the receivership. This was held in Farmers' Loan & Trust Co. v. Grape Creek Coal Co. (C. C.) 50 Fed. 481, 16

L. R. A. 603. We quote from the headnote: 'In a suit to foreclose a mortgage on the property of a coal mining company, the court has no power, as against the objection of even a small minority of the holders of the mortgage bonds, to authorize a receiver appointed in the suit to issue certificates which shall be a first lien on the mortgaged property, in order to enable him to continue the operation of the mines.'

"So in Fidelity Insurance Trust & S. D. Co. v. Roanoke Iron Co. (C. C.) 68 Fed. 623: 'A court of equity has no power, without the consent of all lien creditors, to authorize the receiver of an insolvent private corporation, whose business is not affected with any public interest, to issue certificates which will be a paramount lien upon its property for the purpose of carrying on its business, unless it be necessary to do so in order to preserve the existence of the property or franchises.' The same doctrine was enunciated in the case of Hanna v. State Trust Co., 16 C. C. A. 586, 70 Fed. 2, 30 L. R. A. 201, wherein it was sought to issue receiver's certificates for the purpose of raising funds whereby to carry out certain contracts of sale of real property with purchasers. And in Newton v. Eagle & P. Mfg. Co. (C. C.) 76 Fed. 418, it was determined that the court would not order receiver's certificates to issue for the purpose of raising money to pay interest on the bonds of the company, and thus displace existing liens. To the same purpose is Baltimore Bldg. & L. Ass'n v. Alderson, 32 C. C. A. 542, 90 Fed. 142, wherein the court says: 'In the case of private corporations, the court cannot authorize the issue of receiver's certificates, for the purpose of improving, adding to, or carrying on the business of the company, without first having the consent of creditors whose liens would be affected thereby.' The state courts are quite as uniform in their enunciation of and adherence to the doctrine. In Merriam v. Victory Min. Co., 37 Or. 321, 56 Pac. 75, 58 Pac. 37, 60 Pac. 997, which involved the operation of mining property, the same as in the case at bar, Mr. Justice Bean, after a review of the adjudications of the courts of the United States touching the authority of the receiver in railroad matters to issue certificates in displacement of mortgage liens, says: 'It will thus be seen that the right of a court appointing a receiver to give priority of payment to unsecured debts over the lien of a mortgage is restricted to creditors of railroads which are public concerns, and is only exercised as to them under special circumstances, and in favor of a particular class of claims.' See, also, U. S. Inv. Corp. v. Portland Hospital, 40 Or. 523, 64 Pac. 644, 67 Pac. 194, 56 L. R. A. 627.

"In the case of Raht v. Attrill, 106 N. Y. 423, 13 N. E. 282, 60 Am. Rep. 456, it is held, in effect, that the court, in administering assets through the receiver, is not empowered to displace a mortgage lien by receiver's certificates, except for 'expenses of realization, and also certain expenses, which are called expenses of preservation,' which may be incurred under the order of the court on the credit of the property. That was a case wherein it was sought to have issued receiver's certificates by which to raise the necessary funds for completing a hotel then in course of construction. A later case is that of International Trust Co. v. United Coal Co., 27 Colo. 246, 60 Pac. 621, 83 Am. St. Rep. 59. The court there, after having examined many authorities, some of which we have cited, says: 'We are of opinion that, in administering the affairs of an ordinary insolvent private business corporation for which a receiver has been appointed, a court of equity has not the power to authorize the receiver to incur indebtedness for carrying on the business, and to make the same a first and paramount lien upon the corpus of the property, superior to that of prior lienholders, without their consent. While it may, in a proper action, and with the proper parties pres-

ent, through the instrumentality of a receiver, carry on the business of private corporations or individuals temporarily, and incur obligations therefor that may be made a paramount lien on the corpus of the property, such obligations must have been contracted for, and must relate strictly to, the preservation of the status of the property at the time of the appointment of the receiver.' This is the clearest enunciation of the rule that we have found. In a very late and well-considered case from Idaho the same conclusion is reached. Dalliba v. Winschell, 11 Idaho, 364, 82 Pac. 107, 114 Am. St. Rep. 267.

"So that, in the light of these authorities, there can remain no question as to the rule as it relates to private corporations. The court is without authority, except by the consent of the mortgage lienholders, to supplant their liens by receiver's certificates issued for any obligations other than those arising by way of expenditures for realization and for preserving the property while the business is in course of administration under the receivership. It cannot, by its edict, make any debt or obligation a prior lien, unless appropriately entitled thereto under the law governing receiverships."

The doctrine here enunciated was fully considered and approved in Houston Ice & Brewing Co. v. Clint, 159 S. W. 409, in which case a writ of error was denied by the Supreme Court (Houston Ice & Brewing Co. v. Clint, 169 S. W. 411), wherein Mr. Chief Justice Brown distinguished it from the case of Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858, on the ground that in that case a public service corporation was involved. In Houston Ice & Brewing Co. v. Clint, 159 S. W. 409, supra, it was said, Mr. Chief Justice Fly delivering the opinion, that the doctrine there announced did not contravene our statutory provisions on the subject of receiverships, but on the contrary held that article 2135, R. S. 1911, authorizing the application by receivers of the moneys in their hands to the different purposes therein stated, preferring them in the order named, had reference, not to the corpus, but to the earnings of the corporation pending receivership, and likewise held that the expression "mortgage lien" in article 2138 had reference, not to any and all mortgage liens, but to the particular mortgage lien mentioned in subdivision 2 of article 2128, which authorized the appointment of a receiver when a mortgagee seeks to foreclose his mortgage and sell the mortgaged property, stating, among other things, that:

"We are of the opinion that the Texas statute is merely declaratory of the rules as to receivers which have been applied for a long time, both in England and America, and that we should, in passing upon property in receiverships, be governed by well-established rules, and we find from them that the rights of first mortgage lienholders are carefully guarded from second or inferior lienholders, and the authority denied them to cast property into the hands of a receiver, and practically consume the security of the first lienholder in costs and expenses incurred by an extravagant and reckless receiver."

It is true that in that case the court does state that the prior lienholder was not a party to the suit, but we take it that this is immaterial, because in the present case, while appellant is a party to the suit, yet it

resisted the appointment of a receiver and opposed the issuance of the certificates, and therefore comes within the spirit and reason of the rule stated in the case named.

For the reasons heretofore set out we also overrule the cross-assignment of the Waco Machinery & Supply Company.

Believing that the trial court erred in failing to give priority to appellant's judgment over the claims stated, its judgment is reversed and the cause remanded.

Reversed and remanded.