HOOVEN–OWENS–RENTSCHLER CO. et al. v. T. SCHRIVER & CO. et al. (No. 5586.)

(Court of Civil Appeals of Texas. Austin. Feb. 23, 1916.)

1. VENDOR AND PURCHASER &⟶283—VENDOR'S LIEN — FORECLOSURE — COSTS OF RECEIVERSHIP.

Plaintiff owned real estate upon which was a sugar mill, parts of the machinery in which were mortgaged to different parties. It conveyed the property, reserving a vendor's lien, and entered into an arrangement with the purchasers, under which a part of the cash payment and certain of the purchase money notes were deposited with a bank, the proceeds of collections thereof to be distributed among the mortgage creditors. The purchasers defaulted, and plaintiff brought suit to foreclose the vendor's lien, and asked that the mortgagees be required to set up their respective claims. A receiver was appointed, and an interlocutory judgment rendered, establishing the claims of the mortgagees, and they were notified to intervene and, pursuant to such notice, filed pleas of intervention, setting up the indebtedness to them and their liens, more than a year after the suit was filed, and more than nine months after the receiver was appointed. The property was sold, and the mortgagees made bids for the property covered by their mortgages of less than the mortgage indebtedness. *Held*, that the court erred in requiring the mortgagees to make a payment on their bids for the purpose of paying the costs of the receivership in excess of what would have been the cost to them of collecting

their debt by independent suits to foreclose, as their appearance had only the effect of determining the amounts due them and of fixing their liens, and they received no benefits from the suit that could not have been obtained in a separate suit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 795; Dec. Dig. ☞283.]

2. VENDOR AND PURCHASER ☞283 — VENDOR'S LIEN — FORECLOSURE — COSTS OF RECEIVERSHIP—LIABILITY.

That the mortgagees received from the bank money, distributed under the agreement placing the notes with the bank, did not affect their rights under their mortgages any more than if such payment had been made by the plaintiff who owed the debt; the trust agreement and the notice to the mortgagees thereof having stated that the agreement would not affect mortgage liens.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 795; Dec. Dig. ☞283.]

3. VENDOR AND PURCHASER ☞283 — VENDOR'S LIEN — FORECLOSURE — COSTS OF RECEIVERSHIP—LIABILITY.

That a considerable portion of the costs adjudged by the court was for taxes due on the property did not affect the mortgage liens, where there were more than sufficient funds to pay the taxes after satisfying the mortgage liens.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 795; Dec. Dig. ☞283.]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the San Benito Sugar Manufacturing Company against T. Schriver & Co. and others. From the final judgment, the defendants Hooven-Owens-Rentschler Company and others appeal. Reversed and remanded, with instructions.

Frank C. Pierce and Ira Webster, both of Brownsville, for appellants. J. M. Mothershead, of San Benito, for appellees.

### Findings of Fact.

JENKINS, J. On April 24, 1913, the San Benito Sugar Manufacturing Company, a corporation duly incorporated under the laws of Texas, filed in the district court of Travis county its original petition, in which it alleged, among other things, that on or about the 12th day of April, 1912, plaintiff executed and delivered to W. C. Shaw a deed for three tracts of land, describing the same, situated in Cameron county, Tex., upon the first of which was situated a sugar mill and other improvements; that the consideration for the sale and conveyance of said property was, among other things, the execution by said Shaw and delivery to plaintiff of eight promissory notes, the second of which was for the sum of $110,000, due January 10, 1913; the third and fourth for the sum of $16,500 each, due March 12, 1913; the fifth, sixth, seventh, and eighth for the sum of $33,000 each, due, respectively, March 12, 1914, 1915, 1916, and 1917; that on January 17, 1913, there was paid on note No. 2, $18,000; that each of said notes, as well as the deed, retained a vendor's lien on the land sold; that each provided that if the same was not paid at maturity, all of said notes might become due at the option of the holder thereof; that said note No. 2 was past due and unpaid, and that plaintiff had exercised its option to declare all of said notes due; that in the purchase of said property and the execution of said notes W. C. Shaw was acting for himself and Augustus Heinze; that on May 3, 1912, said Shaw entered into an agreement with plaintiff, by the terms of which it was agreed that $26,491.57 of the cash payment received by plaintiff, and a note for $40,000, being No. 1 of the series aforesaid, and a note for $110,000, being No. 2 of said notes, and said notes Nos. 3 and 4, should be deposited in the Farmers' State Guaranty Bank of San Benito, Tex., to be collected by said bank and the proceeds thereof to be distributed among and paid to the creditors of said San Benito Manufacturing Company, according to a schedule attached to said contract and made a part thereof; that said schedule of creditors included each of the defendants herein set out, other than defendants Shaw, Heinze, and the Southern Irrigation Company. In said schedule 14 creditors were named, and the amounts due to each, respectively, were set out, including Hooven-Owens-Rentschler Co., $29,420; Sugar Apparatus Company, $16,500; that contemporaneous with the purchase and conveyance of the property above referred to defendant Shaw, acting for himself and said Heinze, purchased parcels of real estate and other property, situated in Cameron county, Tex., describing the same; that this property was purchased as part of a general plan by said Shaw and Heinze, to establish in the Rio Grande Valley a business of raising sugarcane and manufacturing sugar therefrom, the carrying out of said plan being one of the inducements to plaintiff to sell said property; that it was a part of the plan agreed on that said Shaw, acting for himself and Heinze, should form a corporation to take over said property, and in accordance with said agreement the Southern Irrigation & Sugar Company was formed, and on the 15th day of March, 1913, said Shaw conveyed said property to said Irrigation & Sugar Company, which assumed all the debts owing by said Shaw to plaintiff, as above stated; that said Shaw and Heinze and the said Irrigation & Sugar Company have failed to pay the notes deposited with said bank, by reason of which plaintiff has been unable to meet its debts hereinbefore referred to; that the debts due by plaintiff and secured by the deposit with the Farmers' State Guaranty Bank of the notes aforesaid, except a debt to the Peden Iron & Steel Company, August Erhardt, Farmers' State Guaranty Bank, A. F. Delbert, and J. W. Blower, are secured by liens upon particular parts of the machinery of

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said sugar mill; that said debts are past due and unpaid, on account of the failure of said Shaw and Heinze and said Irrigation & Sugar Company to pay said notes; that if said liens be foreclosed separately, said mill will be destroyed and dismantled, and plaintiffs' securities for the payment of the debts and notes mentioned will be impaired and destroyed, as the mill will be rendered incapable of operation; that such foreclosures are now threatened by said defendants; that said mill is in need of repair and of preparation for the milling season of 1913–1914; that it is necessary, in order that same may be operated, that contracts now be made with sugar planters for the furnishing and delivery of cane for grinding for said season; that the failure to use said mill for the season will cause great and irreparable deterioration of the mill and irreparable loss to the plaintiff; that neither the said Shaw and Heinze nor the said Irrigation & Sugar Company have any property in this state, except the property conveyed to Shaw and by Shaw to the Irrigation & Sugar Company, as stated; that the Irrigation & Sugar Company is taking steps to mortgage and incumber the lands conveyed to it by defendant Shaw other than the lands above referred to. Plaintiff prayed for judgment against defendants Shaw, Heinze, and the Southern Irrigation & Sugar Company on the notes herein sued on, with foreclosure of its vendor's lien; that the said bank be discharged of its trust, and that the other parties mentioned in said petition be required to set up their respective claims against plaintiff and the property aforesaid, and that judgment be rendered adjudicating their several rights; that defendants Shaw, Heinze, and the Irrigation & Sugar Company be enjoined from selling or incumbering any of their property as described in·said petition pending the disposition of this cause; and that a receiver be appointed to take charge of and operate said sugar mill.

On April 24, 1913, the court set May 10, 1913, to hear the application for injunction and receiver. On June 2, 1913, said hearing having been postponed, the court refused to grant an injunction or to appoint a receiver, subject, however, to further order of the court. On August 30, 1913, Shaw and the Irrigation & Sugar Company filed their answers, and asked that a receiver be appointed, and on said day Samuel L. Dworman was appointed receiver, who accepted and qualified as such. On May 8, 1914, the court rendered an interlocutory judgment, establishing claims against plaintiff, among others, that of appellants herein, the said Hooven-Owens-Rentschler Company and the Deming Apparatus Company for the amounts due them as shown by the petition, and establishing their lien on specific machinery therein described; and all creditors, including these appellants, were notified to intervene in said cause on or before June 15, 1914. On said date appellants herein filed their plea of intervention, setting up the indebtedness to them and their said liens. On November 14, 1914, the interlocutory judgment above referred to was entered nunc pro tunc. Receiver's certificates were issued under order of the court, and said sugar mill was leased pending this litigation. At the July term, 1914, of the district court the receiver was ordered to appraise the said sugar mill and the various parts thereof, and to report same to the October term, 1914; at which time, upon request of the receiver, he was granted until December 15, 1914, to make said report. On December 17, 1914, the receiver filed his report, from which, among other things, it appeared that the court had rendered judgment in favor of Hooven-Owens-Rentschler Company for $36,661.89, and establishing its lien on one 30x40 Hamilton Corliss engine, No. 3412, and nine-roller mill and crusher plant, appraised at $37,500 and rendered judgment in favor of said Deming Sugar Apparatus Company for $19,978.66, establishing its lien upon a quadruple effect evaporator, with all fittings and necessary fixtures and engines, to operate its centrifugal pumps, with a capacity ·to concentrate 250,000 gallons of hot, clarified cane juice per 24 hours, appraised at $16,500; also the amount adjudged to be owing to other creditors who had specific liens, and describing the property upon which they held such liens; and also the value of the land and the amount of debts owing to unsecured creditors. Said receiver was instructed to receive bids on said property in whole or in parts, and on November 20, 1914, he reported to the district court the several bids received, including a bid from the Hooven-Owens-Rentschler Company of $36,612.90 for the property upon which its lien had been established, and bid by the Sugar Apparatus Manufacturing Company of $14,000 for the machinery upon which it had been adjudged to have a specific lien. This report was received and approved by the court January 9, 1915, and the receiver was ordered to make conveyances to said bidders upon their paying in cash 23 per cent. of their bids, to be used in paying the court costs, including receiver's certificates and attorneys' fees and taxes on said property. This order was afterwards, on February 15, 1915, changed, requiring the bidders to pay only 15 per cent. of their respective bids in cash. The report included the sale of the entire property, and the judgment of the court established the claims of all creditors, secured and unsecured, and judgment was given in favor of the receiver for his services, attorneys' fees, receiver's certificates, taxes, and insurance, amounting to $6,011.87, to be taxed as costs in the case. The report of the receiver showed that he had received on cash bids $30,864.74, and had paid the same into the registry of the court. We copy from the final judgment as follows:

"The defendant Hooven-Owens-Rentschler Company, Deming Apparatus Company, and Bauerle & Morris acknowledge the correctness and reasonableness of the amount of costs, taxes, and other expenses hereinbefore adjudged to be paid, but insist that they should not be compelled to pay any of such costs, taxes, and expenses in excess of 3 per cent. of the amount of their respective bids; and they except to the ruling and judgment of the court to the effect that they should pay such costs, taxes, and expenses to the amount of 15 per cent. of their respective bids, and to so much of this order and decree as taxes and adjudges the costs, taxes, and expenses against the Hooven-Owens-Rentschler Company, Deming Apparatus Company, and Bauerle & Morris, in excess of 3 per cent. of the amounts of their respective bids they except, and in open court give notice of appeal to the Court of Civil Appeals of the Third Supreme Judicial District of Texas."

Hooven-Owens-Rentschler Company and Deming Apparatus Company perfected their appeal and present their assignments of error herein.

### Opinion.

[1] It is the contention of appellants herein that, inasmuch as they had a prior lien, duly recorded, upon portions of the mill to secure their debt, which they could have foreclosed in any court having jurisdiction thereof at the ordinary and usual costs in such suits, and, inasmuch as they did not ask for a receiver to be appointed herein, and did not need the services of such receiver, and did not receive any benefit from such services, that they ought not to be held to pay any of the costs of this suit in excess of what would have been the cost to them of collecting their debt by independent suit. To this appellees reply that appellants intervened in said suit and received the benefits of the receiver's services, as well as all other proceedings herein, for which reason they should pay their full pro rata of the costs herein, including receiver's certificates, compensation for the receiver's services and his attorney's fees and taxes due on all of the property.

It is true that the appellants intervened in this case, after being notified by the district court so to do, but their answer as such interveners and defendants herein was not filed until more than a year after the original suit had been filed, and until the court had adjudged the amount of their claims and awarded them specific liens on the property upon which they held mortgages, and not until 9½ months after the receiver had been appointed. The appearance of appellants herein had only the effect of determining the amounts due them (if they had not been parties hereto they would not have been bound by the judgment of the court in reference thereto) and of fixing their lien. All of the benefits that they received from the judgment in this case could have been obtained in a separate suit to collect their debt and foreclose their mortgage. It is made to appear from the record herein that 3 per cent. of the amount of their respective bids would be amply sufficient to cover such costs, including the commission to the receiver for making the sale, such as would have been allowed to a sheriff under similar circumstances. In Houston Ice & Brewing Co. v. Clint, 159 S. W. 409, judgment by the Court of Civil Appeals for the Fourth District, which judgment was approved by the Supreme Court in Clint v. Houston Ice & Brewing Co. (Sup.) 169 S. W. 411, the court held, among other things, that the six different purposes to which moneys in the hands of the receiver should be applied, beginning with the payment of court costs, did not apply to prior mortgages, and did not displace the same, and the Court of Civil Appeals in that case, among other things, said:

"The appointment of the receiver must be governed by the established rules in equity courts applicable to junior mortgages. One of those rules is that 'when the first mortgagee has not taken possession of the property, equity may properly interfere in behalf of subsequent mortgagees or equitable incumbrancers and creditors, and may appoint a receiver for their protection, but without prejudice to the rights of the first mortgagee.' High on Receivers, § 632. No rule, consistent with justice and equity, can be formulated that will contravene the terms of the rule stated. * * * So far as appellant was concerned, there was no necessity for a receivership."

The court quotes from Bradford v. Cooledge, 103 Ga. 753, 30 S. E. 579, as follows:

"If we apply this proper and just principle to the facts in this case, it must be held that so much of the fund in the hands of the receiver, realized from the sale of the mortgaged property, as was necessary to pay off the amount due on the mortgage cannot be diminished by the costs of the case and expenses of the receivership or any proportion thereof, and that so much of such costs and expenses as could not be met by the general fund arising from the sale of the property of the debtor, in excess of the amount due on the mortgage or not covered by the mortgage lien, should properly have been taxed against the plaintiffs. As to the mortgaged creditor in this case, there was no necessity for the receivership; and in the preservation of her lien as required by law, she must be treated as having a superior right to an appropriation of the proceeds arising from the sale of the mortgaged property to the full extent of the amount due thereon; and it would, under the facts as they appear, be inequitable to charge her with any of the costs or expenses in this case."

We quote further from the opinion as follows:

"The concensus of opinions in the United States is opposed to destroying the mortgage lien of a person not a party to receivership, and to the consumption of the mortgaged property in paying the expenses of a receiver not desired by the mortgagee."

Said opinion quotes from Houston Ice Co. v. Fuller, 26 Tex. Civ. App. 239, 63 S. W. 1048, as follows:

" 'We are of the opinion that the court erred in adjudging the expenses of the receivership to be a superior lien to the appellant's mortgage. The receivership was not ordered at the suit of the appellant. and it would be inequitable to exhaust his security with the expenses of a receivership taken out at the instance of other parties. High on Receivership, § 796. Revised Statutes 1895, art. 1472, has application wheth-

er the receivership is at the instance or for the benefit of the lienholder.' * * * It should be a question of costs alone, and appellant should be given the benefit of that method which will cost the least money."

It is true, in Houston Ice & Brewing Co. v. Clint, the Ice & Brewing Company was not a party to the suit in which the receiver was appointed, but we think this can make no difference, where the receiver was not appointed at the instance of the party resisting the payment of receiver's expenses, and where such receivership is not necessary to preserve for him the corpus of the property. We had a similar question before us in First State Bank of Hubbard v. Hubbard Farmers' Oil & Gin Co. et al., and our opinion in that case in 178 S. W. 1015, as well as the opinion in full in Houston Ice & Brewing Co. v. Clint, supra, is here referred to as a fuller expression of our views upon the issue in this case.

[2] As stated in the findings of fact, certain notes and cash were deposited with the Farmers' State Guaranty Bank in trust to be collected and distributed among the creditors. The bank received some cash from the plaintiff, and collected part on the second note, which was distributed in accordance with the agreement, and the appellants received a part of the same. This, however, did not affect their rights under their mortgages any more than if such payment had been made by the plaintiff herein, who owed the debt. Appellants were notified of this trust agreement, and made no objection thereto, but in the notice which they received, it was stated that this agreement would not affect mortgage liens, and it was so provided in the agreement.

[3] A considerable portion of the costs adjudged by the court was for taxes due on the property, but it appears that there are more than sufficient funds to pay such taxes after satisfying the mortgage liens. We cannot see that the case is any different than if the plaintiff had paid such taxes, in which event, of course, it would not have affected appellants' debts or their mortgage lien.

For the reasons stated, the judgment of the trial court is reversed and remanded, with instructions to the court below to ascertain the amount of costs due by appellants in accordance with this opinion.

Reversed and remanded, with instructions.